J-S17042-23

2023 PA Super 202

COMMONWEALTH OF PENNSYLVANIA  :   IN THE SUPERIOR COURT OF
                                              :           PENNSYLVANIA
                        Appellant              :
                                              :
                v.                            :
                                              :
ZAVION TAVARIS LITTLE                         :
                                              :
                        Appellee              :            No. 29 WDA 2023

Appeal from the Order Entered December 22, 2022
In the Court of Common Pleas of Blair County
Criminal Division at No(s): CP-07-CR-0001071-2022

BEFORE: LAZARUS, J., OLSON, J., and KING, J.

OPINION BY KING, J.:                        **FILED: October 13, 2023**

Appellant, the Commonwealth of Pennsylvania, appeals[1] from the order

entered in the Blair County Court of Common Pleas, which granted the motion

of Appellee, Zavion Tavaris Little, for writ of *habeas corpus* and dismissed the

charge against Appellee of conspiracy to commit robbery. We affirm.

In its opinion, the trial court set forth the relevant facts and procedural

history of this case as follows.

> On or about May 28, 2022, the 16-year-old [Appellee] was
> charged as an adult in Blair County…with, in relevant part,
> Count 1, Conspiracy to Commit Robbery—Inflict Serious
> Bodily Injury, 18 Pa.C.S.[A.] § 903(a), and Count 13,
> Escape, 18 Pa.C.S.[A.] § 5121(a).[1]  On or about June 7,
> 2022, and June 15, 2022[,] a preliminary hearing was held.
> Following conclusion of the hearing the charges were bound
> over to the Blair County Court of Common Pleas for further
> disposition.  On or about June 23, 2022, [Appellee] filed a

---

[1] The Commonwealth certified in its notice of appeal that the order appealed
from will terminate or substantially handicap the prosecution, in accordance
with Pa.R.A.P. 311(d).

pleading titled "Emergency *Habeas Corpus* for Lack of jurisdiction." The court ordered the parties to submit memoranda of law in advance of their position. In his Memorandum of Law, [Appellee] argued that the Commonwealth did not establish a *prima facie* case of Conspiracy to Commit Robbery or of Escape in the jurisdiction of Blair County, Pennsylvania.[2]

[1] [Appellee] was also charged with other crimes…: Count 2, Receiving Stolen Property, 18 Pa.C.S.[A.] § 3925(a), Count 3, Fleeing or Attempting to Elude Officer, 75 Pa.C.S.[A.] § 3733(a), Count 4, Possessing Instruments of Crime, 18 Pa.C.S.[A.] § [9]07(a), Count 5, Recklessly Endangering Another Person, 18 Pa.C.S.[A.] § 2705, Counts 6, 7, 8, 9, 10, 11, and 12, traffic violation summaries.

*   *   *

[The Commonwealth introduced the following testimony/evidence at the preliminary hearing.] Trooper Eric Griswold of the Pennsylvania State Police testified that he was working an overtime shift on May 28, 2022 from 7:00 a.m. to 10:00 a.m., on I-99 at the Kettle Road underpass, where he was using radar and watching southbound traffic. Shortly after 8:00 a.m., Griswold noticed a Kia Sorrento traveling at 93 mph in a 70 mph zone. He pulled out and waited until he got close enough to observe the license plate. At that point he could see it was a New York license plate. He attempted to effectuate a traffic stop for the speeding violation. Despite the Trooper using his vehicle's emergency lights, the Sorrento did not stop along the interstate, and instead traveled to the 17th Street exit farther south near Altoona. The Sorrento exited at 17th Street and traveled towards the City of Altoona before turning right onto Valley View Blvd. During the pursuit, the Trooper followed directly behind the Sorrento, which came to a stop on the right shoulder of the roadway

_____

[2] The parties agree that given Appellee's age, the charge of conspiracy to commit robbery was the only offense that placed Appellee's case before the criminal division of the Blair County Court of Common Pleas rather than in the juvenile division.

in the area of 16th Street.

As the Sorrento came to a stop, Griswold got out of his vehicle and commanded the driver of the Sorrento to open the window and show his hands. The driver initially complied, and Griswold was able to see that the driver was wearing a dark T-shirt. Griswold initially could not see whether or not there were other occupants in the vehicle, and after the driver stuck his hands out of the window, Griswold approached the vehicle. As he approached, the driver "put his hands back in and took off, continuing traveling north on Valley View Boulevard." Griswold pursued the Sorrento for "approximately 12-13 miles." During the pursuant, Griswold saw the Sorrento "blow through red lights, run people off the road, travel an excessive speed of 130 miles an hour, weaving in and out of traffic causing danger to all motorists that were on the roadway." The driver attempted to enter the I-99 ramp at the Tipton/Grazierville exit, and was unable to negotiate a curve and crashed into a grassy median. After the crash, Griswold approached the Sorrento to determine whether the occupant or occupants were injured; two black males exited the vehicle and got on the ground at the trooper's command. Griswold was unable to see the occupants' faces because they were wearing masks, with the driver wearing a black mask and the passenger wearing a blue camouflage mask. Griswold also described the clothing the two occupants were wearing, with the driver wearing a black T-shirt with a Chicago Bulls 23 insignia and the passenger wearing a black sweatshirt with Champion across the back.

Griswold provided the occupants with *Miranda*[3] warnings, and [Appellee] agreed to speak with him. [Appellee's] mask was removed and he identified himself[.] [Appellee] told the trooper he had stolen the Kia Sorrento he had been driving from a driveway at a house near a gas station in New York or just inside Pennsylvania. He said that he had previously driven another vehicle in New York, the latter of which he claimed to have had permission to drive.

[Appellee] told Griswold that "…the first vehicle that he had

_____

[3] *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

driven to that location had [run] out of gas and therefore they needed another vehicle." Trooper Griswold was asked, "Did [Appellee] tell you in his statement to you why he and his co-defendant decided to steal the second vehicle in Ellicottville [New York]?" He replied, "I actually asked him why he wouldn't have just stolen gas and he wasn't really able to—he just told me he didn't—he wasn't able to get me a legitimate reason why he stole a vehicle rather than steal gas." The trooper found a black machete located on the driver's side floorboard. [Appellee] denied it was his. To the Trooper's knowledge, [Appellee] did not steal a car in Pennsylvania or rob a person in Pennsylvania.

Trooper Joseph Fay testified that he was on patrol at the time of the incident, and that he "traveled parallel with Griswold on the interstate and Route 220 until the point where that vehicle crashed." When [Appellee] was transported to UPMC Altoona via ambulance, Trooper Fay followed. At the hospital, Fay spoke with [Appellee], who admitted that he and his co-defendant had robbed an individual in New York. [Appellee] also told the trooper that he and his co-defendant had worn masks during the robbery, and that it was their intention to take the robbery victim's car so they could travel to North or South Carolina. [Appellee] stated that the pair had taken a second vehicle with keys in it when the first vehicle had run out of gas. He told the trooper he was traveling through Pennsylvania to get to the Carolinas. To the Trooper's knowledge he did not commit a robbery in Pennsylvania.

\* \* \*

Blake Petty testified that he was a criminal investigator from Rochester, New York, assigned to investigate a "knife point car-jacking" that had occurred in the City of Rochester on May 27, 2022. Petty testified that he and his partner responded to the area at around 10:00 p.m. and that the victim in that incident, Daryl Coley, had been stabbed "multiple times in the back and lower leg." The robbery victim was not able to identify his assailants. The victim told Petty and his partner that his vehicle, a 2006 Toyota Camry, had been stolen. The New York investigators had retrieved surveillance video, time-stamped 9:43 p.m. on May 27, 2022, and were able to see the victim leave Kandi's

Bar in Rochester, New York, as well as two individuals walking behind him who later "attacked" him in a parking lot around the corner. Petty was able to identify items of clothing the individuals were wearing, including a black Champion style sweatshirt.

Petty testified that the stolen Camry was recovered the following day, May 28, 2022, around 7:00 p.m. at a Kwik Fill gas station in Ellicottville, New York. Investigators recovered a "small folding silver bladed knife" from "the driver's side floorboard." The knife appeared "to have blood on the blade," and was collected by law enforcement and a sample was submitted for DNA testing. Petty reviewed surveillance video from Ellicottville, which showed "two individuals getting out of Mr. Coley's 2006 Camry with the same license plate. It shows the two males getting out, one of which has the same—appearing the same black embossed Champion sweatshirt and the other male wearing a black T-shirt with a Bulls 23 Michael Jordan T-shirt." They first parked in front of one of the gas pumps and later pulled the car into a parking spot. Both individuals went into the store. There was additional surveillance footage from inside the store. It depicted both males inside the store, one wearing the black Champion sweatshirt, and the other wearing a black T-shirt with the Bulls logo basketball team with the number 23 on the front. Petty was not able to see the face of either suspect in the surveillance footage because they are both wearing masks. One was wearing a black mask and one was wearing a blue camouflage style mask. They entered and left the store without incident.

Petty testified that the two individuals did not rob the gas station attendant for money or gas or a vehicle, nor accost anyone outside the gas station. Petty identified a blue camouflage ski mask that was retrieved by Pennsylvania State Police following the Blair County crash as being consistent with the ski mask one of the individuals was wearing in surveillance footage from New York.

Hollie Chamberlain, a resident of Ellicottville, New York, testified at the preliminary hearing that she lives near the Kwik Fill gas station and that her vehicle, a Kia Sorrento with New York license plates, had been stolen from outside her residence on the evening of May 27, 2022. Chamberlain

- 5 -

testified that her vehicle had been unlocked and undamaged when she parked it, and that her keys were in the car's center console. Her father called her in the morning when he noticed the car missing from her driveway. She had not given [Appellee] or anyone permission to use her vehicle. The vehicle was not taken from her by force.

She testified that neither she nor anyone she resides with or associates with keeps knives in her car, and that she did not have a knife in her vehicle when she last parked it. She was shown Commonwealth's Exhibit 1 which is characterized in the transcript as a photograph of a knife; she testified she had never seen that knife before.

(Trial Court Opinion, filed 1/9/23, at 1-7) (internal citations omitted).

On December 22, 2022, the trial court granted Appellee's motion for writ of *habeas corpus* for the charge of conspiracy to commit robbery and denied the motion with respect to the escape charge. The Commonwealth filed a timely notice of appeal per Rule 311(d) on January 6, 2023. On January 17, 2023, the court ordered the Commonwealth to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). On February 6, 2023, the Commonwealth timely complied.

The Commonwealth raises the following issues on appeal:[4]

1) Did the trial court err as a matter of law in granting the petition for writ of *habeas corpus* in finding that the Commonwealth failed to meet its *prima facie* burden of proof on the crime of conspiracy to commit robbery?

2) Did the trial court abuse its discretion in determining the Commonwealth had not met its *prima facie* burden of proof on the conspiracy to commit robbery charge when the trial court had previously accepted a factual basis for the co-

_____

[4] Appellee has not filed a responsive brief.

- 6 -

defendant's juvenile court admission to conspiracy to commit robbery?

"In reviewing a trial court's order granting a defendant's petition for writ of *habeas corpus*, we must generally consider whether the record supports the trial court's findings, and whether the inferences and legal conclusions drawn from those findings are free from error." ***Commonwealth v. Hilliard***, 172 A.3d 5, 10 (Pa.Super. 2017) (internal citations and quotation marks omitted). Further, "the evidentiary sufficiency, or lack thereof, of the Commonwealth's *prima facie* case for a charged crime is a question of law," and the appellate court's review is plenary. ***Commonwealth v. Karetny***, 583 Pa. 514, 528, 880 A.2d 505, 513 (2005).

In its first issue, the Commonwealth argues that the testimony elicited at the preliminary hearing demonstrates that Appellee and his co-defendant robbed someone, and intended to continue robbing people and stealing vehicles, to facilitate a drive to North or South Carolina. The Commonwealth asserts it presented *prima facie* evidence that the intended scope of the conspiracy was to steal cars (rather than gasoline) from the time Appellee and his co-defendant left New York until they reached the Carolinas. The Commonwealth highlights the following evidence adduced at the preliminary hearing: Appellee's statement that the pair intended to travel to the Carolinas and stole another vehicle when the first vehicle ran out of gas; the short period of time between the robbery and the car thefts in New York and the crash in

- 7 -

Blair County; the presence of the machete in the driver's floorboard of the wrecked Kia Sorrento as well as the knife found on the driver's side floorboard of the Toyota Camry stolen in the New York knifepoint robbery; and Appellee's false statement to the police about having permission to drive the Camry. The Commonwealth maintains that these pieces of evidence collectively show that Appellee and his co-defendant intended to commit armed robbery, if necessary, to steal vehicles in furtherance of their plan to get to the Carolinas.

The Commonwealth submits it produced *prima facie* evidence that Appellee and his co-defendant were working together in furtherance of their conspiracy to commit robbery from its inception in New York until its defeat in Blair County. The Commonwealth claims that Appellee articulated that his plan was to drive to the Carolinas with his co-defendant but the two had no way to get there. The Commonwealth posits that the two worked in concert to rob the owner of a 2006 Camry so they could steal his vehicle. The Commonwealth emphasizes that Appellee and his co-defendant were seen on surveillance video in New York wearing the same clothing they wore when apprehended, they both wore ski masks to conceal their identities, and they were both present in the Kia Sorrento when it crashed.

The Commonwealth further contends that Appellee lied to Trooper Griswold about having permission to drive the stolen Toyota Camry in New York. The Commonwealth maintains that Appellee told Trooper Fay that Appellee and his co-defendant decided to visit his father in one of the Carolinas

but had no means to get there. The Commonwealth claims that Appellee admitted to Trooper Fay that Appellee and his co-defendant saw an individual on the street in New York, approached him, Appellee acted like he had a firearm, and robbed the individual. Appellee and his co-defendant then drove the stolen vehicle until it ran out of gas, at which point they stole a second vehicle. The Commonwealth emphasizes that Appellee admitted that he and his co-defendant wore masks to hide their identities. The Commonwealth emphasizes that the crimes in New York occurred within hours of the crash of the stolen Kia Sorrento in Pennsylvania.

Based on these facts, the Commonwealth insists the conspiracy to commit robbery lasted from its inception in New York until the vehicle crash in Blair County. The Commonwealth submits that the presence and use of ski masks, the machete found in the Kia Sorrento, and Appellee's statements that he and his co-defendant stole cars rather than gas in their effort to get to the Carolinas establish an overt act that the conspiracy was in effect as Appellee and his co-defendant traveled through Blair County. Under these circumstances, the Commonwealth submits that it presented *prima facie* evidence of Appellee and his co-defendant's conspiracy to commit robbery which began in New York and continued until the conspiracy was defeated by the vehicle crash in Blair County. The Commonwealth concludes that the trial court erred in granting Appellee's motion for writ of *habeas corpus*, and this Court must grant relief. We disagree.

"The purpose of a preliminary hearing is to avoid the incarceration or trial of a defendant unless there is sufficient evidence to establish a crime was committed and the probability the defendant could be connected with the crime." **Commonwealth v. Jackson**, 849 A.2d 1254, 1257 (Pa.Super. 2004) (internal citation omitted). **See also** Pa.R.Crim.P. 542(D) (stating issuing authority shall determine from evidence presented at preliminary hearing whether there is *prima facie* case that (1) offense has been committed; and (2) defendant has committed it).

> The Commonwealth establishes a *prima facie* case when it produces evidence that, if accepted as true, would warrant the trial judge to allow the case to go to a jury. [T]he Commonwealth need not prove the elements of the crime beyond a reasonable doubt; rather, the *prima facie* standard requires evidence of the existence of each and every element of the crime charged. Moreover, the weight and credibility of the evidence are not factors at this stage, and the Commonwealth need only demonstrate sufficient probable cause to believe the person charged has committed the offense. Inferences reasonably drawn from the evidence of record which would support a verdict of guilty are to be given effect, and the evidence must be read in the light most favorable to the Commonwealth's case.

**Commonwealth v. Marti**, 779 A.2d 1177, 1180 (Pa.Super. 2001) (internal citations and quotation marks omitted).

Following a preliminary hearing,

> A pre-trial *habeas corpus* motion is the proper means for testing whether the Commonwealth has sufficient evidence to establish a *prima facie* case. To demonstrate that a *prima facie* case exists, the Commonwealth must produce evidence of every material element of the charged offense(s) as well as the defendant's complicity therein. To meet its burden, the Commonwealth may utilize the

evidence presented at the preliminary hearing and also may submit additional proof.

***Commonwealth v. Dantzler***, 135 A.3d 1109, 1112 (Pa.Super. 2016) (*en banc*) (internal citations and quotation marks omitted). ***See also***

***Commonwealth v. Predmore***, 199 A.3d 925 (Pa.Super. 2018) (*en banc*), *appeal denied*, 652 Pa. 301, 208 A.3d 459 (2019) (reiterating that pretrial motion for writ of *habeas corpus* is appropriate method for defendant to test whether Commonwealth has established *prima facie* case; Commonwealth is entitled to rely on evidence presented at preliminary hearing when responding to pretrial motion for writ of *habeas corpus*).

The Crimes Code defines the offenses of conspiracy and robbery, in relevant part, as follows:

**§ 903. Criminal conspiracy**

**(a) Definition of conspiracy.**—A person is guilty with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:

(1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or

(2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

\* \* \*

**(e) Overt act.**—No person may be convicted of conspiracy to commit a crime unless an overt act in pursuance of such conspiracy is alleged and proved to have been done by him or by a person with whom he conspired.

18 Pa.C.S.A. § 903(a), (e).

### § 3701. Robbery

**(a) Offense defined.**—

(1) A person is guilty of robbery if, in the course of committing a theft, he:

(i) inflicts serious bodily injury upon another[.]

18 Pa.C.S.A. § 3701(a)(1)(i).

Regarding conspiracy, this Court has explained:

To sustain a conviction for criminal conspiracy, the Commonwealth must establish that the defendant (1) entered into an agreement to commit or aid in an unlawful act with another person or persons, (2) with a shared criminal intent and (3) an overt act was done in furtherance of the conspiracy. This overt act need not be committed by the defendant; it need only be committed by a co-conspirator.

Proof of a conspiracy is almost always extracted from circumstantial evidence. The Commonwealth may present a web of evidence linking the defendant to the conspiracy beyond a reasonable doubt. The evidence must, however, rise above mere suspicion or possibility of guilty collusion. Mere association, presence at the scene, or knowledge of the crime is insufficient; the Commonwealth must prove that the defendant became an active participant in the criminal enterprise and that he had knowledge of the conspiratorial agreement.

*Commonwealth v. Hennigan*, 753 A.2d 245, 253 (Pa.Super. 2000) (internal citations, footnote, and quotation marks omitted).

"[A] prosecution for criminal conspiracy may be brought in any county where the unlawful combination was formed, or in any county where an overt

act was committed by any of the conspirators in furtherance of the unlawful combination." ***Commonwealth v. Gross***, 627 Pa. 383, 393, 101 A.3d 28, 34 (2014) (internal citation omitted). "The duration of a conspiracy depends upon the facts of the particular case, that is, it depends upon the scope of the duration of the agreement entered into by its members." ***Id.*** at 394, 101 A.3d at 34 (internal citation omitted).

Instantly, Appellee filed a motion for writ of *habeas corpus* on the charge of conspiracy to commit robbery. In his motion, Appellee claimed the Commonwealth presented insufficient *prima facie* evidence at the preliminary hearing that Appellee and his co-defendant conspired to commit **robbery** (as opposed to theft) in **Blair County, Pennsylvania**. The trial court granted Appellee's motion for writ of *habeas corpus*, reasoning as follows:

> The testimony from the preliminary hearing shows that the two defendants worked in concert in New York to rob the owner of a 2006 Camry. They were seen on surveillance video together in New York wearing the same clothing they wore when apprehended, and they both wore ski masks to conceal their identities. After robbing the victim of his Camry, they abandoned it at a gas station in New York after it ran out of gas.
>
> They were again seen on surveillance video at the gas station in New York with the same clothing and masks. However, they did not rob the gas station, or commit violence against any person inside or outside the gas station; they took a car from a nearby driveway that was parked with the keys inside it, and began driving.
>
> **Although it is clear on a *prima facie* basis that the defendants committed a robbery in New York, and further that the defendants agreed together, or conspired, to commit theft of the Kia Sorrento parked**

**with the keys in it from Hollie Chamberlain, in New York, and to receive stolen property, to wit the stolen Kia Sorrento, and took a step in furtherance of the continued conspiracy to receive stolen property, namely continuing to drive the car, in both New York and Pennsylvania, the Commonwealth has produced no facts to show that the defendants conspired to commit a robbery in Pennsylvania, much less in Blair County, Pennsylvania, or that they took a step in Blair County, Pennsylvania, in furtherance of conspiracy to commit robbery.**

Instead, the testimony about the defendants' activities in Blair County was initially that they were driving South on I-99. The Commonwealth had produced no evidence to show that the attention of the authorities in Blair County, Pennsylvania, would have been drawn to [Appellee] if he had been driving the speed limit.

Although the Commonwealth points to the fact that the defendants were wearing masks, obscuring their identities while fleeing is not evidence of intent to inflict serious bodily injury on another in the course of committing theft. …

\* \* \*

Nor is the mere fact that a machete was found in the car evidence of conspiracy to commit robbery; [Appellee] denied ownership of the machete, and neither [Appellee] nor co-defendant, who both freely admitted other crimes, made any statements to the fact that it was their intent to do anything in Pennsylvania other than travel through it to go to the Carolinas. The folding knife allegedly used in the robbery was abandoned in New York and not brought to Pennsylvania; this can equally be taken as concealment of the knife or abandonment of the idea to commit robbery.

The court finds that defendants' actions in New York, their voiced plan to get to the Carolinas, their traveling through Blair County wearing masks, and fleeing from police chasing them for speeding are not sufficient to show a *prima facie* case including some overt act indicating specifically that a conspiracy to commit robbery in Blair County was formulated or was in effect as they traveled through Blair

County on I-99.

In this case, viewing the Commonwealth's testimony in the light most favorable to the Commonwealth, as we must, … the court finds that the Commonwealth has presented *prima facie* evidence that a conspiracy to commit robbery beg[a]n in New York and culminated with a robbery in New York. The Commonwealth's suspicion and conjecture that the juvenile defendants were going to begin committing robbery or conspiring to commit robbery in Pennsylvania, when they had stopped doing so in New York, does not meet its *prima facie* burden.

In summary, based on its reading of the law, which was greatly aided by the well drafted memorandum of law from each party, which the original deciding Magisterial District Judge did not have the opportunity to review, and the transcript of the preliminary hearing proceedings, this court finds from the totality of the circumstances in this case and the case law that the Commonwealth has not proven a *prima facie* case that [Appellee] committed conspiracy to commit robbery in Blair County. The Commonwealth has shown a *prima facie* case of other crimes in Blair County impulsively committed by these juveniles, (***see*** FN 1…), but not conspiracy to commit robbery.

(Trial Court Opinion at 11-15) (internal citations omitted) (emphasis added).

The trial court accurately summarized the testimony adduced at the preliminary hearing. The testimony demonstrated that Appellee and his co-defendant wanted to visit Appellee or his co-defendant's father in North or South Carolina but had no means to do so. Appellee and his co-defendant subsequently committed a robbery in New York on May 27, 2022, during which time they held up the owner of a Toyota Camry and stole his vehicle. About two hours away, while still in New York, the car ran out of gas. The men abandoned the Toyota Camry at the gas station as well as a small folding

silver bladed knife, which was found in the floorboard of the vehicle. Next, the men went inside the gas station wearing masks, but they did not rob the gas station attendant or commit any crimes therein. Instead, they discovered an unlocked Kia Sorrento in a driveway nearby the gas station, and they stole that vehicle. The owner of the vehicle was unaware her vehicle was stolen until later and conceded that no force was used to deprive her of the car. The next day, while in Pennsylvania, police observed the Kia Sorrento traveling at an excessive speed and Trooper Griswold effectuated a traffic stop. Ultimately, a chase ensued, and the vehicle Appellee was driving crashed.

Under these circumstances, we agree with the trial court that the Commonwealth did not meet its burden to establish a *prima facie* case that Appellee committed the offense of conspiracy to commit robbery under Section 3701(a)(1)(i), in Pennsylvania. In other words, the Commonwealth presented insufficient *prima facie* evidence that Appellee and his co-defendant agreed to inflict serious bodily injury upon another in the course of committing a theft and took some overt act in furtherance of that agreement in this jurisdiction. **See** 18 Pa.C.S.A. §§ 903, 3701(a)(1)(i). **See also Gross, supra**; **Hennigan, supra**. Rather, as the trial court opined, the Commonwealth presented *prima facie* evidence that Appellee and his co-defendant conspired to commit the theft of the Kia Sorrento in New York and took an overt act in furtherance of that plan while in Pennsylvania by continuing to drive the stolen vehicle in this state. There is simply no evidence

on this record that Appellee and his co-defendant committed any overt act **in Pennsylvania** in furtherance of a conspiracy to commit **robbery**. *See id.* Therefore, the record supports the trial court's findings and its legal conclusion to grant Appellee's motion for writ of *habeas corpus* on the charge of conspiracy to commit robbery is free of legal error. *See Hilliard, supra*.

In its second issue, the Commonwealth argues that Appellee's co-defendant tendered an admission to the offense of conspiracy to commit robbery on or about July 7, 2022, when his case was transferred to juvenile court. The Commonwealth asserts that it agreed to transfer the co-defendant's case to juvenile court (but not Appellee's case) because the co-defendant was less culpable than Appellee. The Commonwealth submits that the testimony and evidence presented at Appellee's preliminary hearing is consistent with the information presented in the affidavit of probable cause in both Appellee's and the co-defendant's cases, which can be seen as the factual basis for the co-defendant's admission to conspiracy to commit robbery. The Commonwealth emphasizes that the court accepted the co-defendant's admission at the adjudicatory hearing as knowing, intelligent, and voluntary. The Commonwealth maintains that the Pennsylvania Rules of Juvenile Court Procedure require a court to find a factual basis for an admission before accepting the juvenile's admission. The Commonwealth claims the trial court accepted a factual basis to justify the offense of conspiracy to commit robbery for the less-culpable co-defendant when it accepted the co-defendant's

- 17 -

admission. The Commonwealth concludes that "[t]o accept a factual basis for conspiracy to commit robbery in the less-culpable co-defendant's juvenile admission and to grant a writ of *habeas corpus* on the same facts leads to inconsistent and unfair results, and demonstrates an unreasonable exercise of judgment." (Commonwealth's Brief at 32). We disagree that relief is due.

Preliminary, we observe that the Commonwealth did not raise this issue in its memorandum of law in opposition to Appellee's motion for writ of *habeas corpus*. Rather, the Commonwealth advanced this particular argument for the first time in its Rule 1925(b) statement. Because the Commonwealth did not present this argument before the trial court at the appropriate stage of the proceedings when the trial court would have had an opportunity to consider it before ruling on Appellee's motion, the claim is waived. **See generally Commonwealth v. Tucker**, 143 A.3d 955 (Pa.Super. 2016), *appeal denied*, 641 Pa. 63, 165 A.3d 895 (2017) (stating failure to make timely and specific objection before trial court at appropriate stage of proceedings will result in waiver of issue on appeal).

Additionally, although the Commonwealth's brief cites to a proceeding relating to Appellee's co-defendant wherein the co-defendant allegedly admitted to conspiracy to commit robbery, this transcript is not in the certified record on appeal. The fact that the Commonwealth included this transcript in the reproduced record is of no moment, as we cannot consider evidence which is outside of the certified record. **See Commonwealth v. Holston**, 211 A.3d

1264 (Pa.Super. 2019) (*en banc*) (reiterating that our review is limited to those facts which are contained in certified record and what is not contained in certified record does not exist for purposes of our review).

Further, the Commonwealth does not develop this argument with relevant legal authority in its appellate brief. Aside from one blanket citation to the definition of an abuse of discretion and one citation to a Rule of Juvenile Court Procedure governing admissions in juvenile court (***see*** Commonwealth's Brief at 29, 31), the Commonwealth cites no law in support of its claim. In other words, the Commonwealth provides no legal authority for its contention that the court should have considered Appellee's co-defendant's admission in **a juvenile adjudicatory proceeding** when deciding Appellee's motion for writ of *habeas corpus* in adult criminal court. The Commonwealth's failure to develop this issue on appeal with relevant legal authority constitutes waiver of the claim on appeal on this ground as well. ***See*** Pa.R.A.P. 2119(a) (stating argument shall be divided into as many sections as there are questions presented, followed by discussion with citation to relevant legal authority). For all of these reasons, the Commonwealth's second appellate issue is waived. Accordingly, we affirm.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 10/13/2023