J-S16037-24

2024 PA Super 205

COMMONWEALTH OF PENNSYLVANIA   :    IN THE SUPERIOR COURT OF
                                           :          PENNSYLVANIA
            Appellant            :
                                           :
                                           :
            v.                   :
                                           :
                                           :
BRIAN M. BLACK                    :     No. 1601 EDA 2023

Appeal from the Order Entered May 11, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): MC-51-CR-0017788-2022

BEFORE:    STABILE, J., LANE, J., and STEVENS, P.J.E.[*]

OPINION BY STEVENS, P.J.E.:                **FILED SEPTEMBER 11, 2024**

The Commonwealth of Pennsylvania appeals from the order entered by the Court of Common Pleas of Philadelphia County which denied its petition to refile charges of aggravated assault by vehicle while driving under the influence (DUI) and aggravated assault by vehicle against Appellee Brian M. Black. We reverse the trial court's order and remand for trial.

Appellee was initially charged with aggravated assault by vehicle while DUI, aggravated assault by vehicle, DUI (general impairment), recklessly endangering another person (REAP), and reckless driving. These charges were filed in connection with an October 11, 2022 motor vehicle accident in which Appellee drove into two parked vehicles and caused extensive injuries to the victim, Johanna Gonzalez ("the victim").

_____

[*] Former Justice specially assigned to the Superior Court.

At the January 6, 2023 preliminary hearing held in the Philadelphia Municipal Court, the Commonwealth presented the testimony of one of the Philadelphia police officers that responded to the accident. The prosecution presented photo exhibits of the accident scene and the parties stipulated that Appellee's blood test results showed he had a blood alcohol concentration (BAC) of .138 and 30 nanograms of cannabinoids in his system, both of which were above the legal limit. However, the municipal court judge dismissed all charges based on a lack of evidence.

The Commonwealth then filed a motion in the Court of Common Pleas to refile the charges. On May 11, 2023, the trial court held a hearing at which the prosecution presented the notes of testimony from the preliminary hearing, the accident scene photos, and the parties' stipulation to Appellee's blood test results. Notes of Testimony (N.T.), 5/11/23, at 18-19.

In addition, the Commonwealth presented the testimony of the victim and her boyfriend, Juan Bennett. The victim indicated that on the day in question, at approximately 11:35 p.m., she was standing behind Bennett's car that was parked in front of their residence located at 3341 North Kensington Road in Philadelphia. N.T. at 5. North Kensington Road has two lanes of opposing traffic and bicycle lanes that separate the traffic lanes from the shoulder of the road where vehicles are parallel parked near the curb. Exhibit C-1, C-2.

At that time, Appellee drove his vehicle into Bennett's parked car, propelling it forward and pinning the victim between Bennett's car and the

vehicle parked behind it. N.T. at 6. The victim testified that she sustained injuries to her femur, ankles, and ribs, such that she requires the use of a wheelchair, attends physical therapy, sees a psychiatrist, and has been unable to work. N.T. at 6-7. The accident also caused mental and emotional trauma to the victim and her son, who was six years old at that time and witnessed the accident. N.T. at 7.

Bennett testified that at the time of the accident, he was on the sidewalk and the victim was getting something out of the trunk of his vehicle. N.T. at 9-13. Bennett claimed that Appellee's vehicle crossed the opposing lane of traffic on Kensington Avenue and hit his truck which was parked on the other side of the street. N.T. at 15. Bennett indicated that there was no traffic at that time and there were no other cars on the road beside the vehicles parked on the side of the street. N.T. at 14-15.

Bennett indicated that he rushed over to Appellee's car after the impact as Appellee appeared to be asleep at the wheel and had not removed his foot from the gas pedal even after the vehicle had crashed. N.T. at 11. Bennett attempted to wake Appellee up, but Appellee did not respond. N.T. at 11, A crowd gathered around Appellee's vehicle and an unidentified individual removed Appellee's foot from the gas pedal. N.T. at 11.

When Appellee eventually awoke or regained consciousness, he was combative and disoriented as he accused Bennett of hitting his car and asked "Why y'all's car in the middle of the street?" N.T. at 11. Despite Bennett's efforts to try to explain that Appellee had caused the accident, Appellee kept

- 3 -

asking to talk to the police. N.T. at 11-12. Bennett remained with Appellee until the police arrived.

At the conclusion of the hearing, the trial court granted the Commonwealth's request to reinstate the charges of DUI, reckless driving, and REAP, but denied the Commonwealth's motion to reinstate the charges of aggravated assault by vehicle while DUI and aggravated assault by vehicle.

The Commonwealth filed a timely appeal, certifying that the trial court's order substantially handicaps and/or effectively terminates prosecution of Appellee on the specified charges.[1,2] The Commonwealth complied with the trial court's direction to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

The Commonwealth presents the following issues for our review:

_____

[1] The Commonwealth indicated in its notice of appeal that the trial court's order denying its request to reinstate the relevant charges was "presently unavailable." Pennsylvania Rule of Appellate Procedure 301 ("Requisites of an Appealable Order") provides that generally "no order of a court shall be appealable until it has been entered upon the appropriate docket in the trial court." Pa.R.A.P. 301(a)(1). Rule 301 also specifically requires that "[e]very order shall be set forth on a separate document." Pa.R.A.P. 301(b).
As a result, we remanded this case with directions for the trial court to ensure that the certified record was complete with a copy of the order denying the Commonwealth's request to refile the applicable charges. The trial court submitted a supplemental certified record to comply with this Court's order.
[2] This challenge to the trial court's order denying the prosecution's request to refile the relevant charges is an interlocutory appeal as of right pursuant to Pa.R.A.P. 311(d). **See also Commonwealth v. Free**, 902 A.2d 565 n.1 (Pa.Super. 2006) (citing **Commonwealth v. Karetny**, 880 A.2d 505, 513 (Pa. 2005) (concluding that "the Commonwealth is entitled to appeal from an order quashing some, but not all, of the charges filed against a criminal defendant").

Did the lower court err in ruling that the evidence was insufficient to establish a *prima facie* case that [Appellee] committed aggravated assault by vehicle while DUI and aggravated assault by vehicle, where the evidence showed that [Appellee], while above the legal limit for alcohol and under the influence of marijuana, drove his car into the opposite lane of traffic and hit a parked car, and then kept his foot on the gas pedal following the crash, all of which caused the victim's multiple, serious injuries?

Commonwealth's Brief, at 3.

Our standard of review is as follows:

"In reviewing a trial court's order granting a defendant's petition for writ of *habeas corpus*, we must generally consider whether the record supports the trial court's findings, and whether the inferences and legal conclusions drawn from those findings are free from error." **Commonwealth v. Hilliard**, 172 A.3d 5, 10 (Pa.Super. 2017) (internal citations and quotation marks omitted). Further, "the evidentiary sufficiency, or lack thereof, of the Commonwealth's *prima facie* case for a charged crime is a question of law," and the appellate court's review is plenary. **Commonwealth v. Karetny**, 583 Pa. 514, 528, 880 A.2d 505, 513 (2005).

**Commonwealth v. Little**, 305 A.3d 38, 43–44 (Pa.Super. 2023).

Our courts have held that:

[t]he basic principles of law with respect to the purpose of a preliminary hearing are well established. The preliminary hearing is not a trial. The principal function of a preliminary hearing is to protect an individual's right against an unlawful arrest and detention. ... At this hearing the Commonwealth bears the burden of establishing at least a *prima facie* case that a crime has been committed and that the accused is **probably** the one who committed it.

**Commonwealth v. Perez**, 249 A.3d 1092, 1102 (Pa. 2021) (quoting

**Commonwealth v. McBride**, 595 A.2d 589, 591 (Pa. 1991) (citation

omitted) (emphasis in original)).

> The Commonwealth establishes a *prima facie* case when it produces evidence that, if accepted as true, would warrant the trial judge to allow the case to go to a jury. [T]he Commonwealth need not prove the elements of the crime beyond a reasonable doubt; rather, the *prima facie* standard requires evidence of the existence of each and every element of the crime charged. Moreover, the weight and credibility of the evidence are not factors at this stage, and the Commonwealth need only demonstrate sufficient probable cause to believe the person charged has committed the offense. Inferences reasonably drawn from the evidence of record which would support a verdict of guilty are to be given effect, and the evidence must be read in the light most favorable to the Commonwealth's case.

*Little*, 305 A.3d at 45 (quoting **Commonwealth v. Marti**, 779 A.2d 1177, 1180 (Pa.Super. 2001) (internal citations and quotation marks omitted)). "A judge at a preliminary hearing is not required, nor is he authorized to determine the guilt or innocence of an accused; his sole function is to determine whether probable cause exists to require an accused to stand trial on the charges contained in the complaint." **Perez**, 249 A.3d at 1102.

First, the Commonwealth claims the trial court erred in denying its request to refile the charge of aggravated assault by vehicle while DUI when the prosecution had presented a *prima facie* case of Appellee's guilt.[3] Specifically, the Commonwealth asserts that the trial court incorrectly determined that the prosecution failed to present evidence that Appellee acted with the required *mens rea* of criminal negligence and that the accident was caused by Appellee's consumption of alcohol or marijuana.

_____

[3] Defense counsel, the Defender Association of Philadelphia, did not present any argument in its brief, to challenge the Commonwealth's assertion that the dismissal of the aggravated assault by vehicle while DUI charge was improper.

The Motor Vehicle Code relevantly provides as follows:

**§ 3735.1. Aggravated assault by vehicle while driving under the influence**

(a) Offense defined.—Any person who negligently causes serious bodily injury to another person as the result of a violation of section 3802 (relating to driving under the influence of alcohol or controlled substance) and who is convicted of violating section 3802 commits a felony of the second degree when the violation is the cause of the injury.

75 Pa.C.S.A. § 3735.1(a) (bold in original).

Thus, in order to sustain a conviction for aggravated assault by vehicle while DUI, the Commonwealth must show that the defendant negligently caused serious bodily injury to another individual as result of a DUI related offense. 75 Pa.C.S.A. § 3735.1(a). The Crimes Code defines negligence as a *mens rea* exhibited "when [a person] *should be aware of a substantial and unjustifiable risk* ... [that is] of such a nature and degree that the actor's failure to perceive it ... involves a gross deviation from the standard of care that a reasonable person would observe in that actor's situation." 18 Pa.C.S.A. § 302(b)(4) (emphasis added).

In this case, the trial court concluded that there was "no evidence that [Appellee] caused the accident through a gross deviation from a standard of care." Trial Court Opinion (T.C.O.), date at 6. The trial court reasoned that:

[n]either [the victim] nor Bennet[t] saw the manner in which Black operated his motor vehicle before the impact. Bennet[t] first became aware of the accident when he heard the collision with the first car. There was no evidence as to the manner of Black's operation of the motor vehicle prior to the collision such as driving at a high rate of speed, swerving into the opposite lane or disregarding stop signs, red lights or other indicia of erratic

- 7 -

driving. The evidence that was presented when viewed in a light most favorable to the Commonwealth, indicated that [Appellee] crossed into the opposite lane of travel, striking parked vehicles, and that he was "asleep" or unconscious after the collisions. This court cannot speculate as to the cause of the accident or that the consumption of alcohol or cannabis caused [Appellee's] unconsciousness. It is equally likely that the collision caused his unconsciousness. The Commonwealth failed to present evidence that [Appellee's] consumption of alcohol or the presence of cannabinoids was the cause of the accident and [the victim's] injuries.

T.C.O. at 6-7.

First, we do not agree with the trial court's determination that no one witnessed Appellee driving erratically. Bennett testified several times that he observed Appellee's vehicle cross into the opposing lane and hit the parked cars. The trial court placed emphasis on the fact that on cross-examination, when defense counsel asked Bennett if his back was turned to oncoming traffic, Bennett said "yeah." N.T. at 13. However, the following exchange occurred when Bennett was asked to clarify if he saw the accident happen:

> [Trial court:] Sir, did you actually see [Appellee] operating the vehicle?
>
> [Bennett:] *Yeah.* Her [sic] was behind the wheel and his foot was still on the pedal, and my girlfriend was pinned between two cars.
>
> [Trial court:] And how far away were you when you saw this?
>
> [Bennett:] How far? I was, like, maybe from here to where the DA is.
>
> [Trial court to defense counsel:] Any other questions based on that?
>
> [Defense counsel:] Yes, Your Honor. When you first became aware of the accident, it was because you heard the noise; is that correct?

- 8 -

[Bennett:] (nodding)

[Defense counsel:] Answer audibly, please.

[Bennett:] Yes.

[Defense counsel:] And then at that point, you turned to observe who --

[Bennett:] *No. I'm standing right there and I could see everything*. All I seen was him coming down, boom, boom, boom. First I checked on my girlfriend. She looked like she was dead. That was scary. Then I went all around, and my truck --

[Trial court:] Sir, just answer the question. Did you actually see [Appellee] driving prior to the impact with your girlfriend[?]

[Bennett:] *I seen him hit my truck, yes.*

N.T. at 16 (emphasis added). As the trial court was required to view the evidence in the light most favorable to the Commonwealth, the trial court should have accepted Bennett's testimony that he did witness Appellee's driving before the impact.

Second, we disagree with the trial court's finding that the Commonwealth failed to present a *prima facie* case that Appellee was criminally negligent. While the trial court noted that the evidence did not clearly show whether Appellee was asleep before the accident or whether the collision caused his unconsciousness, we do not find this distinction to be controlling.

To the extent that the evidence shows that Appellee was conscious at the time of impact, this Court has found that driving a vehicle on the wrong side of the roadway is sufficient to permit an inference of criminal negligence. ***Commonwealth v. Eichelberger***, 528 A.2d 230, 232 (Pa.Super. 1987). In

***Eichelberger***, this Court found that there was sufficient evidence to show the defendant acted with negligence when his vehicle crossed the center line of the roadway and collided with oncoming vehicles. ***Id***. This Court noted that the factfinder was free to consider the defendant's alcohol consumption and lack of sleep in determining whether he was guilty of criminal negligence. ***Id***.

To the extent that the evidence shows Appellee was asleep or unconscious at the time of impact, we acknowledge that our courts have "deemed the act of falling asleep at the wheel alone to be enough to raise a jury question of negligence in the tort arena." ***Commonwealth v. Huggins***, 836 A.2d 862, 869 (Pa. 2003) (citing ***Bernosky v. Greff***, 38 A.2d 35, 36 (Pa. 1944)). The facts of this case require this Court to determine whether the Commonwealth presented a *prima facie* case that Appellant acted with "criminal negligence," which is "a heightened deviation from the standard of care applicable when civil tort liability is at issue." ***Huggins***, 836 A.2d at 867.

In doing so, we find the Supreme Court's decision in ***Huggins*** to be instructive. The ***Huggins*** Court observed that:

> A motor vehicle can be a dangerous instrumentality. Driving is a correspondingly heavily regulated privilege, both as to licensure and the rules of the road, the regulation being a necessary concomitant of the dangers to self and others inherent in driving. The danger increases with the speed at which a vehicle is operated, since speed both reduces reaction times and heightens the consequences of any collision. The danger also may increase if other safety measures are ignored-whether those measures involve vehicle maintenance, internal safety features such as seating capacity or restraints, or the rules of the road. No driver can get behind the wheel without an acute awareness of the "responsible post of duty," he is assuming.

> Losing consciousness at the wheel differs in kind from the acts of momentary inadvertence or inattention that often occasion car accidents and are commonly encompassed in the term "negligence" in the tort arena. A momentary lapse leaves the driver unprepared for the unexpected or extraordinary. A loss of consciousness, on the other hand, leaves one totally unprepared even for the ordinary requirements for safe driving. Drivers have an unflagging duty either to remain vigilant and awake or to immediately desist from driving.

*Id.* at 869.

The Supreme Court also recognized that it is "common knowledge that sleep is preceded by some internal warning." *Huggins*, 836 A.2d at 869.

> In a normal human being sleep does not come without warning. Before sleep there is drowsiness and before drowsiness there is usually great fatigue or at least a desire to sleep. Human affairs would be in a precarious state if locomotive engineers, aviators, chauffeurs, motormen and others in charge of machinery in motion were liable to "fall asleep" at any time without first becoming consciously aware of sleep's approach and taking immediate steps to bring to a stop the mechanism under their control or placing it in the hands of one who is completely awake and alert. The Creator wisely provided that sleep does not come upon human beings unannounced.

*Id.* at 869–70 (quoting *Bernosky*, 38 A.2d at 36).

Given the common knowledge of the mechanism of how a person falls asleep, drivers are also equally aware that one is likely to fall asleep in a state of exhaustion or while intoxicated with alcohol, a depressant with known sedating effects that promote the onset of sleep. Thus, there is a reasonable inference of criminal negligence when a driver, who is under the influence of alcohol, falls asleep behind the wheel as such a driver should be aware of an increased risk of a rapid sleep onset while intoxicated. The driver's failure to perceive the substantial and unjustifiable risk posed when he or she drives

with an increased likelihood of falling asleep constitutes a gross deviation from the standard of care that a reasonable person would observe in that actor's situation. 18 Pa.C.S.A. § 302(b)(4).

In this case, Appellee chose to operate his vehicle while under the influence of alcohol and drugs as the parties stipulated that Appellee's blood test results revealed a BAC of .138 and 30 nanograms of cannabinoids, both of which were above the legal limit. There is evidence to allow the factfinder to determine that Appellant drove erratically into the opposing lane of traffic, hit two parked cars on the other side of the road, and never took his foot off the gas pedal. There is also evidence to allow the factfinder to infer that Appellee may have fallen asleep or lost consciousness before the accident. Appellant chose to drive his vehicle in a state of intoxication, despite being chargeable with knowledge of an increased likelihood of the sudden onset of sleep due to his intoxication. At a minimum, the record demonstrates that the Commonwealth presented a prima facie case that Appellee acted with criminal negligence.[4]

Further, while the trial court determined that it could not speculate to the cause of the accident, it was not required to do so. The undisputed evidence would allow a factfinder to reasonably conclude that Appellee was intoxicated to the point that either he fell asleep while driving or was so

---

[4] Moreover, as discussed *infra* in our analysis of the non-DUI aggravated assault by vehicle charge, the evidence also supports an inference of recklessness, which is a higher level of culpability than criminal negligence.

impaired that he crossed into the opposing lane of traffic and hit parked cars on the berm of the road without ever applying his brakes. In addition, there was no evidence that any other driver contributed to the crash or that road or weather conditions presented driving hazards.

We conclude that that the Commonwealth did present a *prima facie* case that Appellee negligently caused the accident and the victim's extensive injuries as a result of his driving under the influence of alcohol or marijuana.[5] As such, the trial court erred in denying the Commonwealth's request to refile the charge of aggravated assault by vehicle while DUI.

Similarly, the Commonwealth claims the trial court erred in refusing to allow it to refile the charges of aggravated assault by vehicle when the prosecution had properly presented a *prima facie* case of Appellee's guilt on this charge. Specifically, the Commonwealth asserts that the trial court incorrectly determined that the prosecution failed to present evidence that Appellee acted with the required *mens rea* of recklessness. The Motor Vehicle Code relevantly provides as follows:

**§ 3732.1. Aggravated assault by vehicle**

**(a) Offense. --** Any person who recklessly or with gross negligence causes serious bodily injury to another person while engaged in the violation of any law of this Commonwealth or municipal ordinance applying to the operation or use of a vehicle or to the regulation of traffic, except section 3802 (relating to driving under influence of alcohol or controlled substance), is

---

[5] The trial court did not find that the Commonwealth failed to meet its burden to show that Appellee caused the victim serious bodily injury.

guilty of aggravated assault by vehicle, a felony of the third degree when the violation is the cause of the injury.

75 Pa.C.S.A. § 3732.1(a).

The Crimes Code defines the culpability for recklessness as follows:

A person acts recklessly with respect to a material element of an offense when he *consciously disregards a substantial and unjustifiable risk* that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and intent of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation.

18 Pa.C.S.A. § 302(b)(3) (emphasis added). Our courts have clarified that the "concept of gross negligence is encompassed within the concept of recklessness as set forth in Section 302(b)(3)." ***Commonwealth v. Karner***, 193 A.3d 986, 992 (Pa.Super. 2018) (citing ***Huggins***, 836 A.2d at 868 (Pa. 2003) (generally indicating that "grossly negligent" is equivalent state of mind to "recklessness")).

To the extent that the evidence shows that Appellant was awake when he caused the accident, this Court has held that driving in the opposite lane of traffic may sufficiently establish the *mens rea* of recklessness. In ***Commonwealth v. Smoker***, 203 A.2d 358, 360 (Pa.Super. 1964), this Court determined that the jury was justified in inferring that the defendant acted recklessly when he drove on the wrong side of the road without any visible reason or compulsion to do so and caused a deadly head-on collision. This Court noted that "[n]othing appeared in the evidence to show that he was forced off the road, that he was faced with a sudden emergency or that any

other fact existed which might have relieved him of responsibility." ***Id. See also Commonwealth v. Setsodi***, 450 A.2d 29, 32 (Pa.Super. 1982) (finding that defendant's failure to observe approaching vehicles in opposing lane of traffic before making a left turn into a private driveway may have constituted recklessness or criminal negligence in supporting a *prima facie* case of involuntary manslaughter).

We also note that a defendant's failure to apply the brakes of his vehicle or to attempt to avoid an accident is an additional factor to support an inference of recklessness. This Court has concluded that "a motorist's conduct is more egregious if he does not apply his brakes or attempt to slow down before a collision than if he attempts to stop." ***Commonwealth v. Miller***, 955 A.2d 419, 423 (Pa.Super. 2008) (citing ***Commonwealth v. Dellavecchia***, 725 A.2d 186, 189 (Pa.Super. 1998)).

We acknowledge the trial court relied on this Court's precedent in ***Karner*** which suggests that the commission of a summary offense under the Vehicle Code alone does not, by itself, establish the *mens rea* of recklessness. ***Karner***, 193 A.3d at 993. However, we agree with the Commonwealth that the factual circumstances in ***Karner*** can be distinguished from the instant case.

In ***Karner***, this Court concluded that the trial court did not err in finding the Commonwealth failed to present a *prima facie* case of evidence of Karner's recklessness or gross negligence to support charges of non-DUI homicide by vehicle and non-DUI aggravated assault by vehicle. The arresting officer

suspected Karner was under the influence of Xanax at the time he ran into the back of a vehicle containing two victims, one of which sustained severe injuries and the other died. This Court noted that the victims' vehicle was traveling at a substantially reduced speed of nearly 20 miles per hour below the speed limit, which also could have contributed to the collision. This Court noted that while Karner was traveling 8-12 miles per hour over the speed limit, this speed limit violation in that area was not reckless or grossly negligent.

In comparison, in this case, the prosecution presented evidence that Appellee had committed more than just a simple traffic violation. It is undisputed that before the crash, Appellee drove across the opposing lane of traffic where there were no cars coming toward him and collided with two parked cars while Appellee's gas pedal was fully engaged. The record contains no evidence of any circumstances that Appellee had any reason or compulsion to leave his lane of traffic.

Further, as noted above, even assuming that Appellee fell asleep before the accident occurred, such conduct can also be probative of recklessness. "[B]y continuing to drive after receiving the warning signs of sleep, a person does indeed consciously disregard a substantial risk of death on our highways. The risk of death posed by a sleeping driver of an automobile is obvious. It is a risk that any driver must appreciate before getting behind the wheel or continuing to drive." **Huggins**, 836 A.2d at 870.

In **Huggins**, our Supreme Court reversed the dismissal of a defendant's charge of involuntary manslaughter and found that the trial court erred in

- 16 -

determining that the Commonwealth failed to establish a *prima facie* case of recklessness. In that case, the defendant was driving a fifteen-passenger van containing twenty-one children and three adults, none of whom were wearing seatbelts. *Id.* at 863. The defendant was traveling approximately twenty-two m.p.h. over the speed limit when he admittedly fell asleep at the wheel and awoke just before the van collided with the back end of another vehicle, causing his van to flip and come to rest on the passenger side. *Id.* Two children were killed in the accident and several others required medical care for their injuries at a hospital. *Id.*

The Supreme Court emphasized that it did not need to consider whether the act of falling asleep while driving may alone constitute recklessness as there were additional factors that revealed the defendant consciously disregarded a serious risk which was a gross deviation from the standard of care a reasonable person would observe under the circumstances. *Id.* at 870. The Supreme Court noted that the defendant was responsible for driving a van full of children which would cause a reasonable person to be "extra-cautious." *Id.* In spite of these circumstances, the defendant did not act cautiously in filling the van to overcapacity with children who were not secured with safety belts, choosing to speed excessively, and allowing himself to fall asleep. *Id.* The Supreme Court concluded that "viewed in their totality, the circumstances [] reveal[ed] a pattern of conscious disregard for circumstances that placed the lives of these children in increasing danger." *Id.* at 871.

In ***Commonwealth v. Pedota***, 64 A.3d 634 (Pa.Super. 2013), this Court affirmed the judgment of sentence of a defendant who was convicted of involuntary manslaughter and homicide by vehicle in connection with the deadly accident the defendant caused after he admittedly fell asleep while driving a tractor-trailer. This Court determined that the defendant's "stipulation to having fallen asleep while driving an eighteen-wheel tractor-trailer along busy Interstate 78 supplied evidence of the gross negligence or recklessness required to convict in this case." ***Id***. at 640. As a result, the Supreme Court reasoned that it was the defendant's burden to "rebut this proof with evidence that the classic signs of sleep eluded him so as to deprive him of the opportunity to stop his truck safely before sleep began." ***Id***. This Court in ***Pedota*** clarified that

> so long as the evidence shows a driver fell asleep and caused death amidst circumstances demonstrating a reckless disregard of human life, these signs will be implied and the Commonwealth will have met its burden of proof as a matter of law. The burden of production then shifts to the defendant driver to appeal to the finder of fact that he was deprived of both warning signs and an opportunity to act on them.

***Id***. at 640–41.

In the instant case, the trial court never considered that the fact that Appellee fell asleep while driving in an intoxicated state could have been probative of recklessness. However, the Commonwealth presented evidence of Appellee's conduct that would sustain an inference of recklessness as a factfinder could determine that Appellant had knowledge of an increased likelihood of the sudden onset of sleep due to his intoxication and was on

notice of the danger this conduct posed to nearby drivers and bystanders. The warning that Appellee was likely to fall sleep due to his intoxication would have given Appellee the opportunity to stop driving to prevent the potential harm that could result from his conduct.

Appellee's decision to drive, despite having notice that he would likely fall asleep due to his intoxication, demonstrated a conscious disregard of the danger of causing a collision, injury, and even death. Appellant's disregard of this danger resulted in extensive injuries to the victim, a bystander who was unexpectedly and forcefully pinned between two vehicles from the impact of the crash. We find that the Commonwealth met its burden to show that the instant circumstances would allow a factfinder to determine that Appellee disregarded a substantial and unjustifiable risk which constituted "a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation." 18 Pa.C.S.A. § 302(b)(3). Accordingly, we conclude that the Commonwealth presented a *prima facie case* of aggravated assault by vehicle to allow the charge to go to trial.

For the foregoing reasons, we reverse the trial court's order, reinstate the charges of aggravated assault by vehicle while DUI and aggravated assault by vehicle, and remand for further proceedings consistent with this decision. Jurisdiction is relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date:   9/11/2024