J-S26037-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA  :  IN THE SUPERIOR COURT OF
                                                   :              PENNSYLVANIA
                                                   :
                    v.                             :
                                                   :
                                                   :
LARUE BOOKER                          :
                                                   :
              Appellant                      :      No. 1863 MDA 2024

Appeal from the Judgment of Sentence Entered December 12, 2024
In the Court of Common Pleas of Luzerne County Criminal Division at
No(s):  CP-40-CR-0003153-2020

BEFORE:  LAZARUS, P.J., OLSON, J., and BECK, J.

MEMORANDUM BY BECK, J.:                     **FILED: SEPTEMBER 3, 2025**

Larue Booker ("Booker") appeals from the judgment of sentence imposed by the Luzerne County Court of Common Pleas ("trial court") following his convictions of criminal conspiracy to commit delivery of a controlled substance and criminal use of a communication facility.[1]  On appeal, Booker challenges the trial court's denial of a motion to suppress and the sufficiency of the evidence to sustain his convictions.  We affirm.

The charges stem from a drug and alleged gun deal between Booker and a confidential informant ("the CI") working for the Pennsylvania Office of the Attorney General.  On July 7, 2020, the CI called Booker to purchase a handgun and fentanyl.  Booker had the handgun but needed a source to bring

_____

[1] 18 Pa.C.S. §§ 903(a), 7512(a).

the fentanyl. Booker instructed the CI to come to his residence to receive the gun and fentanyl that same day.

Agents of the Attorney General's office searched the CI prior to the meeting and did not find any drugs or guns. The CI then met with Booker, entered his residence, and waited for the source to arrive. The CI kept Agent Ian Urbanski updated throughout the meeting via text. After the source arrived and entered Booker's residence, the CI texted Agent Urbanski that the deal was complete. The CI left and delivered a handgun and fentanyl to Agent Urbanski.

Agents arrested Booker several months later and transported him to Kingston Police Station for processing. While being processed by Agent Urbanski, Booker made comments and asked questions about his arrest. Agent Urbanski immediately orally advised Booker of his **_Miranda_**[2] rights. Booker stated he understood his rights. Booker then continued speaking and told Agent Urbanski he had purchased the gun for the CI. He also expressed confusion as to why he was being charged with a drug crime because he did not make any profit on the deal and was only helping a friend.

Booker filed a motion to suppress these statements. Following a hearing, the trial court denied the motion. Booker then entered a guilty plea to conspiracy and criminal use of a communication facility. The trial court

_____

[2] **_Miranda v. Arizona_**, 384 U.S. 436 (1966).

later permitted him to withdraw this plea. The case proceeded to trial, after which the jury found Booker guilty of conspiracy and criminal use of a communication facility, and not guilty of delivery of a controlled substance and unlawful sale or transfer of a firearm. The trial court sentenced Booker to an aggregate term of 72 to 144 months of incarceration. This timely appeal followed.

Booker raises the following issues for our review:

I. Whether the court erred in denying [Booker]'s [m]otion to [s]uppress [s]tatements taken by [l]aw [e]nforcement[?]

II. Whether the Commonwealth presented sufficient evidence to convict [Booker] of [c]onspiracy and [c]riminal [u]se of a [c]ommunication [f]acility[?]

Booker's Brief at 1.

### Motion to Suppress

Booker asserts the trial court should have suppressed the statements he made at the police station after being arrested. *Id.* at 5, 8. Because he began making statements before Agent Urbanski administered *Miranda* warnings, Booker contends the statements are inadmissible. *Id.* at 8. He further argues his statements after hearing his *Miranda* rights are also inadmissible because the totality of the circumstances, including not signing a written *Miranda* waiver, indicate he did not voluntarily waive his rights. *Id.*

Our review of a challenge to a trial court's denial of a motion to suppress is well established:

Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. The suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

Moreover, appellate courts are limited to reviewing only the evidence presented at the suppression hearing when examining a ruling on a pre[]trial motion to suppress.

*Commonwealth v. Freeman*, 150 A.3d 32, 34-35 (Pa. Super. 2016) (citation omitted).

*Miranda* rights are required only prior to a custodial interrogation. Custodial interrogation is questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of [his] freedom of action in any significant way. Furthermore, volunteered or spontaneous utterances by an individual are admissible without the administration of *Miranda* warnings. When a defendant gives a statement without police interrogation, we consider the statement to be 'volunteered' and not subject to suppression.

*Commonwealth v. Garvin*, 50 A.3d 694, 698 (Pa. Super. 2012) (citation and quotation marks omitted).

[T]he term "interrogation" under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect. The latter portion of this definition focuses primarily upon the perceptions of the

- 4 -

suspect, rather than the intent of the police. This focus reflects the fact that the ***Miranda*** safeguards were designed to vest a suspect in custody with an added measure of protection against coercive police practices, without regard to objective proof of the underlying intent of the police. A practice that the police should know is reasonably likely to evoke an incriminating response from a suspect thus amounts to interrogation. But, since the police surely cannot be held accountable for the unforeseeable results of their words or actions, the definition of interrogation can extend only to words or actions on the part of police officers that they should have known were reasonably likely to elicit an incriminating response.

***Commonwealth v. Ventura***, 975 A.2d 1128, 1136-37 (Pa. Super. 2009) (citation omitted).

At the suppression hearing, Agent Urbanski testified that law enforcement arrested Booker and brought him to the police station where they transferred custody of him to Agent Urbanski. N.T., 9/16/2022 at 8-9. While Agent Urbanski was processing Booker at the station, Booker began asking questions and talking about his arrest. ***Id.*** at 9. Agent Urbanski immediately stopped Booker and administered ***Miranda*** warnings to him, which Booker said he understood.[3] ***Id.*** While Agent Urbanski continued to process Booker after reading him his rights, Booker then, without prompting, stated he did not believe he did anything wrong regarding the fentanyl delivery because he did not make a profit and was only helping a friend. ***Id.*** at 9, 12.

---

[3] It is unclear from the record what specific statements Booker made before Agent Urbanski interrupted him to administer ***Miranda*** warnings.

Regarding Booker's statements before receiving *Miranda* warnings, the trial court found Booker made voluntary, spontaneous statements that did not require the administration of *Miranda* warnings. Trial Court Opinion, 2/18/2025, at 4 (unpaginated). We agree. Booker's statements were unprompted and volunteered. Indeed, he made the statements while Agent Urbanski was processing him, without any questions posed, and there were no actions or circumstances "likely to elicit an incriminating response from the suspect." *See Ventura*, 975 A.2d at 1136-37. Therefore, the trial court properly denied the motion to suppress Booker's pre-*Miranda* statements. *See Commonwealth v. Cornelius*, 856 A.2d 62, 75-76 (Pa. Super. 2004) (finding the trial court properly denied a motion to suppress when the defendant made voluntary and inculpatory statements without *Miranda* warnings); *see also Commonwealth v. Baez*, 720 A.2d 711, 720 (Pa. 1998) ("[V]olunteered or spontaneous utterances are admissible even though the declarant was not '*Mirandized*.'").

Regarding Booker's statements after receiving *Miranda* warnings, Booker voluntarily made these statements after waiving those warnings. *See* Trial Court Opinion, 2/18/2025, at 4 (unpaginated). The record reflects that Agent Urbanski was still processing Booker and did not ask any questions, establishing that Booker was not under an interrogation. Further, Booker unequivocally acknowledged that he understood his rights and continued speaking. As such, when Agent Urbanski administered *Miranda* warnings,

Booker waived the warnings and made voluntary and spontaneous statements. *See Baez*, 720 A.2d at 720. The absence of a written waiver of *Miranda* warnings does not render the waiver involuntarily given. *Commonwealth v. Baez*, 21 A.3d 1280, 1286 (Pa. Super. 2011) (explaining that an "explicit waiver" of one's *Miranda* rights is required under Pennsylvania law as demonstrated by "'an outward manifestation of a waiver such as an oral, written **or** physical manifestation.'") (emphasis added). Therefore, the trial court properly denied the motion to suppress Booker's post-*Miranda* statements. Booker's first claim is without merit.

## Sufficiency of the Evidence

Booker next challenges the sufficiency of the evidence to support his convictions. This Court assesses sufficiency claims according to the following standard:

> Because a determination of evidentiary sufficiency presents a question of law, our standard of review is de novo and our scope of review is plenary. In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to prove every element of the offense beyond a reasonable doubt. The facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. It is within the province of the [fact finder] to determine the weight to be accorded to each witness's testimony and to believe all, part, or none of the evidence. The Commonwealth may sustain its burden of proving every element of the crime by means of wholly circumstantial evidence. Moreover, as an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the [fact finder].

*Commonwealth v. Scott*, 325 A.3d 844, 849 (Pa. Super. 2024) (citation omitted).

Conspiracy

Regarding the conspiracy conviction, Booker argues the Commonwealth did not offer the CI as a witness, resulting in no firsthand account of the incident. Booker's Brief at 10, 11. Booker further contends the CI's absence prevented him from examining the CI's credibility on cross-examination. *Id.* at 10.

Criminal conspiracy requires the Commonwealth to prove "1) an agreement, 2) shared criminal intent, and 3) an overt act." *Commonwealth v. Johnson*, 180 A.3d 474, 479 (Pa. Super. 2018) (citation omitted); *see also* 18 Pa.C.S. § 903(a). "[A] conspiracy may be inferred where it is demonstrated that the relation, conduct, or circumstances of the parties, and the overt acts of the co-conspirators sufficiently prove the formation of a criminal confederation." *Johnson*, 180 A.3d at 479.

Agent Urbanski testified that on a recorded phone call, Booker arranged for the CI to receive a handgun and to have a source provide the CI with fentanyl. N.T., 5/21/2024 at 26. Booker invited the CI to his residence for the exchange. *Id.* at 27. Agent Urbanski then testified that he saw Booker with the CI and the CI texted Agent Urbanski that they were waiting for Booker's fentanyl source. *Id.* at 28-30. Agent Urbanski witnessed a man arrive at the residence, meet with Booker and the CI, and then exit the

residence. *Id.* at 30. The CI then texted Agent Urbanski the deal was complete and brought the fentanyl to him after leaving the residence. *Id.* at 31. Agent Urbanski testified Booker admitted at the police station that he was "helping a friend" with the drug deal. *Id.* at 41. Kayla Flick, an investigative analyst for the Pennsylvania Attorney General's Office who was present when Agent Urbanski was processing Booker, also testified that Booker admitted he was involved in the exchange. *Id.* at 80.

Viewing this evidence in the light most favorable to the Commonwealth as verdict winner, the jury could reasonably infer that Booker made an agreement with the source to deliver fentanyl to the CI and shared the intent to do so. *See Commonwealth v. Murphy*, 844 A.2d 1228, 1238-39 (Pa. 2004) (finding sufficient evidence for a conspiracy to deliver a controlled substance conviction where the appellant determined if a buyer was a police officer, the appellant called the supplier over, and the supplier knew this meant there was a potential buyer). The evidence shows Booker arranged for his source to come to his residence to deliver fentanyl and admitted to "helping a friend" execute the drug deal. *See Commonwealth v. Little*, 305 A.3d 38 (Pa. Super. 2023) (stating that any co-conspirator can make the overt act, not only the defendant). The absence of the CI's testimony at trial did not render the evidence insufficient, as Agent Urbanski provided the details of the controlled buys, including providing the buy money and recovering the drugs after the deal. *See Commonwealth v. Ellison*, 213 A.3d 312, 319-20 (Pa.

Super 2019) (finding the evidence sufficient for a delivery of a controlled substance conviction when only an agent testified to the details of a drug deal executed by a confidential informant with the appellant). Therefore, the evidence was sufficient to support Booker's conspiracy conviction.

<u>Criminal Use of a Communication Facility</u>

For the criminal use of a communications facility conviction, Booker argues a jury could not reasonably infer his guilt without the CI's testimony, and the text messages between the CI and Agent Urbanski, which were not admitted into evidence. Booker's Brief at 11.

Criminal use of a communication facility requires the Commonwealth to prove "(1) [a]ppellant[] knowingly and intentionally used a communication facility; (2) [a]ppellant[] knowingly, intentionally or recklessly facilitated an underlying felony; and (3) the underlying felony occurred." ***Commonwealth v. Moss***, 852 A.2d 374, 382 (Pa. Super. 2004); ***see also*** 18 Pa.C.S. § 7512. A communication facility is "a public or private instrumentality used or useful in the transmission of signs, signals, writing, images, sounds, data or intelligence of any nature transmitted in whole or in part, including, but not limited to, [a] telephone." 18 Pa.C.S. § 7512(c).

As described above, Agent Urbanski testified that the CI made a recorded phone call to Booker during which Booker stated he had to call his source for fentanyl. N.T., 5/21/2024 at 26. Booker also invited the CI to his residence for the exchange. ***Id.*** Agent Urbanski testified that the CI met with

the source at Booker's residence and received the fentanyl from him, which he then delivered to Agent Urbanski. *Id.* at 30-31.

The evidence is sufficient to sustain Booker's conviction. The recorded phone call from the CI evidences that Booker used a telephone as a communication device for facilitating the delivery of a controlled substance. Booker's invitation to the CI to have the exchange take place at his residence furthers the facilitation of this felony. Agent Urbanski's testimony that the CI received and brought the fentanyl to him is sufficient evidence that the underlying felony of delivery of a controlled substance occurred. Neither the CI's testimony nor the text messages as exhibits are necessary for a jury to conclude Booker criminally used a communication facility. *See Ellison*, 213 A.3d at 319-20; *see also Scott*, 325 A.3d at 849. Therefore, the evidence is sufficient to sustain Booker's conviction.

Judgement of sentence affirmed.

Judgment Entered.

_____
Benjamin D. Kohler, Esq.
Prothonotary

Date: 09/03/2025

- 11 -