J-S04039-26          2026 PA Super 47

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
Appellant :
:
:
:
:
v. :
:
:
:
EDWARD E. WALSH, JR. : No. 1012 EDA 2025

Appeal from the Order Entered March 13, 2025
In the Court of Common Pleas of Delaware County Criminal Division at
No(s): CP-23-CR-0000351-2024

BEFORE: LAZARUS, P.J., STABILE, J., and NEUMAN, J.

OPINION BY NEUMAN, J.: **FILED MARCH 16, 2026**

The Commonwealth, as the appellant, appeals from the trial court's March 13, 2025 order granting Edward E. Walsh, Jr.'s ("Walsh") motion to dismiss a charge of driving under the influence (DUI) under 18 Pa.C.S. § 3802(d)(2). After careful review, we reverse in part, affirm in part, and remand for further proceedings.

Walsh was charged with the above-stated DUI offense, as well as several summary traffic violations, based on a traffic stop conducted in October of 2023. At Walsh's preliminary hearing on January 18, 2024,

> the arresting police officer, James Kelso, testified concerning his encounter with [Walsh] around 9:10 PM on October 11, 2023. He observed an automobile occupying two lanes of travel and later swerving back-and-forth across a single lane. After stopping the vehicle, Officer Kelso noted the driver's ([Walsh's]) constricted pupils (despite the prevailing low light environment), episodic displays of irritability and agitation, exaggerated reflexes[,] as well as [Walsh's] difficulty in speaking. [Walsh] denied the [o]fficer's request that he participate in field sobriety testing. Officer Kelso believed [Walsh] was using drugs which affected his driving and arrested [Walsh] for DUI. While it is not clear as to

the order of events, the officer also testified that he found "numerous bottles of kratom, some open, some unopened, as well as a liquid on the driver's side floorboard consistent with the kratom in the bottle," [N.T. Preliminary Hearing,] 1/18/24[,] at 8. [Walsh] was taken to a local hospital where he submitted to chemical blood testing. The argument for maintaining the DUI charge rested upon [Walsh's] use of kratom[2] and caffeine and the effect these substances had on his ability to safely operate a motor vehicle.

> [2] "Kratom" commonly refers to an herbal substance that can produce opioid- and stimulant-like effects. **See** https://nida.nih.gov/research-topics/kratom (last visited 4/25/25).

The test results, according to the [o]fficer, revealed the presence of mitragynine[1] and caffeine. A lab analysis was presented at the preliminary hearing; however, those documents were not presented to this court for consideration.[2] Officer Kelso offered

_____

[1] Mitragynine is "the principal psychoactive indole alkaloid $C_{23}H_{30}N_2O_4$ that is found in kratom and that binds as an agonist to certain opioid receptors to produce effects (such as analgesia) similar to that of opioids." Mitragynine, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/mitragynine (last visited Feb. 13, 2026).

[2] The Honorable Deborah A. Krull of the Court of Common Pleas of Delaware County noted, at the outset of her opinion, that Walsh's case was

> before [her] after a local reassignment of jurists to different divisions. Previously, the pending [m]otion [to dismiss] … was submitted to [the Honorable] Anthony D. Scanlon. He was provided a copy of the transcript from the preliminary hearing and scheduled a hearing where only argument was presented. These materials were passed along as the record. We recognize that our handling of this *[h]abeas* [m]otion is as a court *de novo*. For that reason, the Commonwealth and defense counsel were given an opportunity to agree to submission of whatever portions of the previous record they wished and/or present such evidence as was deemed appropriate. Upon reassignment, the Notes of Testimony from both the preliminary hearing and the argument before Judge Scanlon formed the basis for decision-making.

Trial Court Opinion (TCO), 5/29/25, at 1.

- 2 -

significant information regarding kratom at the preliminary hearing. However, we note that he was not qualified to testify as an expert witness or even as an officer with specialized training or experience with what our legislature has defined (and what is referenced *infra*) as "drugs" at the preliminary hearing.

TCO at 2.

At the close of the preliminary hearing, the magisterial district judge found the Commonwealth had established a *prima facie* case and bound all charges to the Court of Common Pleas. *See* N.T. Preliminary Hearing at 17. On December 13, 2024, Walsh filed a "Motion to Quash the Bills of Information." Therein, he averred:

4. The Commonwealth failed to establish a *prima facie* case on the charges in this matter. According to the notes of testimony from the preliminary hearing held on January 18, 2024, a blood draw was performed wherein the only substances found in [Walsh's] blood were caffeine and kratom, neither of which are a controlled substance. *See* N.T. [Preliminary Hearing] at … 8, 11-12. A copy of the preliminary hearing transcript from January 18, 2024 … shall be provided to this Honorable Court and the Commonwealth separate from this motion.

5. To establish a *prima facie* case for DUI as charged, the Commonwealth must show three elements: "1) that the defendant drove; 2) while under the influence of a **controlled** substance; and 3) to a degree that impairs the defendant's ability to drive safely." ***Commonwealth v. Spence***, [290 A.3d 301, 309 (Pa. Super. 2023)] (citing ***Commonwealth v. Griffith***, … 32 A.3d 1231, 1238 ([Pa.] 2011))[1] (emphasis added).[2]

[1] Although both the ***Spence*** and ***Griffith*** Courts are addressing separate appeals post-trial, the elements of the offense remain the same whether the burden is *prima facie* or beyond a reasonable doubt and is thus applicable to the instant matter.

[2] Counsel for [Walsh] notes that the statute in question[,] 75 Pa.C.S. § 3802(d)(2)[,] as written states[,] "[t]he individual is under the influence of a drug or combination of drugs to a degree which impairs the individual's ability to

- 3 -

safely drive, operate or be in actual physical control of the movement of the vehicle." However, the **Spence** and **Griffith** Courts specifically describe the elements of the offense to include the Commonwealth's need to show that the substance in question is a **controlled** substance, apparently recognizing the severe implications of charging those individuals under the influence of non-controlled substances with DUI. It is undisputed through the testimony and lab results provided at the preliminary hearing on January 18, 2024[,] that [Walsh] was **not** under the influence of a **controlled** substance. As such, the Commonwealth has not sustained [its] burden and the current case before this Honorable Court must be quashed and dismissed.

6. The charges against [Walsh] should be quashed and dismissed as no evidence was presented at the preliminary hearing necessary to establish a *prima facie* case and hold [Walsh] for trial.

7. [Walsh] respectfully requests that this Honorable Court quash the bills of information against him and dismiss all charges.

Motion to Quash, 12/13/24, at 1-2 (unnumbered; unnecessary capitalization and italicized emphasis omitted; some bolded emphasis in original, some added).

On February 19, 2025,[3] Judge Scanlon conducted a hearing at which the parties presented arguments on Walsh's motion. First, Walsh reiterated his arguments that **Spence** and **Griffith** specifically declared "the Commonwealth has to show that the [d]efendant is under the influence of a controlled substance" for a DUI conviction under section 3802(d)(2). N.T. Hearing, 2/19/25, at 4. Although Walsh conceded "kratom is a **drug**," he stressed it is not a **controlled substance**. **Id.** at 5 (emphasis added). Thus, Walsh

_____

[3] The transcript states the date as February 19, 2024, which is apparently a typo.

- 4 -

insisted the Commonwealth had failed to present a *prima facie* case he was "under the influence of a controlled substance" and his DUI charge must be quashed. *Id.* at 6.

In response, the Commonwealth contended the Legislature had "differentiated between controlled substances and … drugs" in the statute, thus indicating it had "allowed for DUIs based on the effects of both of those things." *Id.* at 6-7. In support, the Commonwealth cited **Commonwealth v. Roser**, 914 A.2d 447 (Pa. Super. 2006), where we upheld the trial court's instructing the jury, before it deliberated on DUI charges under 75 Pa.C.S. § 3802(d)(2) and (d)(3), that "'drugs' are 'any substance, other than food, that is intended to affect the function of the human body[,]'" and did not, therefore, limit the definition of "drugs" to only controlled substances. *Id.* at 455; *see also* N.T. Hearing at 7. According to the Commonwealth, "the notes of testimony are clear that the drugs that were in [Walsh's] system had an effect on his ability to drive a vehicle, which is all that is needed under [section 3802](d)(2) [of the] statute." N.T. Hearing at 7. Therefore, the Commonwealth maintained it had satisfied its burden of proving a *prima facie* case at the preliminary hearing, and the court should deny Walsh's motion. *Id.*

At the close of the hearing, Judge Scanlon took Walsh's motion under advisement. On March 13, 2025, he issued an order granting Walsh's motion and dismissing his DUI charge under section 3802(d)(2), as well as Walsh's charge of public drunkenness under 18 Pa.C.S. § 5505. *See* Order, 3/13/25,

at 1 (single page). Judge Scanlon did not issue an opinion, or provide any reasons in the order for his decision.

On March 18, 2025, the Commonwealth filed a motion for reconsideration of Judge Scanlon's order. At that point, Walsh's case had been reassigned to Judge Krull. On March 25, 2025, Judge Krull issued an order denying the Commonwealth's motion for reconsideration. On April 11, 2025, the Commonwealth filed a timely notice of appeal, certifying the March 13, 2025 order will terminate or substantially handicap the prosecution of its case pursuant to Pa.R.A.P. 311(d). It does not appear from the record that Judge Krull ordered the Commonwealth to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. However, on May 29, 2025, Judge Krull filed a Rule 1925(a) opinion. Herein, the Commonwealth states one issue for our review:

> Whether the trial court erred in granting [Walsh's] motion to quash where the evidence presented by the Commonwealth established a *prima facie* case that [Walsh] was driving under the influence of a drug or combination of drugs to a degree which impaired his ability to safely drive, operate or be in actual physical control of the movement of the vehicle?

Commonwealth's Brief at 3.

Initially, we note Walsh incorrectly styled his motion as a "Motion to Quash Bills of Information," when "the proper means for testing the finding that the Commonwealth has sufficient evidence to establish a *prima facie* case is to petition the trial court for a writ of *habeas corpus*." **Commonwealth v.**

*Morman*, 541 A.2d 356, 357 (Pa. Super. 1988) (citing *Commonwealth v.*

*Hetherington*, 331 A.2d 205 (Pa. 1975)).  However,

> [i]n … *Hetherington*, *supra*, our Supreme Court held that a petition labeled a "Motion to Quash" was in fact a writ of *habeas corpus* attacking the magistrate's finding that the Commonwealth at the preliminary hearing had established a *prima facie* case. When the substance of the "Motion to Quash" is identical to that of a writ of *habeas corpus*, the reviewing court undertakes an identical inquiry in disposing of the issue asserted[,] and the relief sought is the same, there is no reason why an error in label should prevent a court from seeing that justice is done.

*Commonwealth v. Orman*, 408 A.2d 518, 520 (Pa. Super. 1979).  Here, the

substance of Walsh's motion to quash was identical to a writ of *habeas corpus*

and Judge Scanlon assessed it as such.  Thus, we will treat Walsh's motion as

a petition for writ of *habeas corpus*.

> In reviewing Judge Scanlon's order granting Walsh's petition,

> we must generally consider whether the record supports the trial court's findings, and whether the inferences and legal conclusions drawn from those findings are free from error.  A trial court may grant a defendant's petition for writ *habeas corpus* after a preliminary hearing where the Commonwealth has failed to present a *prima facie* case against the defendant.

> The basic principles of law regarding the establishment of a *prima facie* case at a preliminary hearing are well settled.  The preliminary hearing is not a trial.  The principal function of a preliminary hearing is to protect an individual's right against an unlawful arrest and detention.  At this hearing the Commonwealth bears the burden of establishing at least a *prima facie* case that a crime has been committed and that the accused is probably the one who committed it.

> At the pre-trial stage of a criminal prosecution, it is not necessary for the Commonwealth to prove the defendant's guilt beyond a reasonable doubt.  A *prima facie* case exists when the Commonwealth produces evidence of each of the material

elements of the crime charged and establishes probable cause to warrant the belief that the accused committed the offense. Further, the evidence must be considered in the light most favorable to the Commonwealth so that inferences that would support a guilty verdict are given effect.

In addition, the evidence should be such that if presented at trial, and accepted as true, the judge would be warranted in allowing the case to go to the jury. The standard clearly does not require that the Commonwealth prove the accused's guilt beyond a reasonable doubt at this stage. Most significant in this appeal, the weight and credibility of the evidence is not a factor at this stage.

***Commonwealth v. Hilliard***, 172 A.3d 5, 10 (Pa. Super. 2017) (cleaned up; emphasis and unnecessary capitalization omitted).

In this case, the Commonwealth argues Judge Scanlon erred by granting Walsh's *habeas* petition regarding his DUI charge. According to the Commonwealth, Judge Scanlon incorrectly concluded section 3802(d)(2) requires a defendant to be under the influence of a controlled substance. It insists "[t]he [L]egislature's intent to differentiate between a drug and a controlled substance is evident from its deliberate use of distinct terms and its creation of two subsections." Commonwealth's Brief at 15. In support, the Commonwealth points to the language of section 3802(d)(1) and (2), which state:

**(d) Controlled substances.--**An individual may not drive, operate or be in actual physical control of the movement of a vehicle under any of the following circumstances:

(1) There is in the individual's blood any amount of a:

(i) Schedule I controlled substance, as defined in the act of April 14, 1972 (P.L. 233, No. 64), known as The Controlled Substance, Drug, Device and Cosmetic Act;

(ii) Schedule II or Schedule III controlled substance, as defined in The Controlled Substance, Drug, Device and Cosmetic Act, which has not been medically prescribed for the individual; or

(iii) metabolite of a substance under subparagraph (i) or (ii).

(2) The individual is under the influence of a drug or combination of drugs to a degree which impairs the individual's ability to safely drive, operate or be in actual physical control of the movement of the vehicle.

75 Pa.C.S. § 3802(d)(1), (2) (footnote omitted).  The Commonwealth insists,

[h]ad the legislature intended to limit the statute's applicability solely to controlled substances, it would have used that specific term consistently throughout [the statute].  It did not.  Instead, by using both "drug" and "controlled substance" in separate provisions, the legislature demonstrated its intent to encompass a broader range of substances under the term "drug" in (d)(2) than the controlled substances listed in a schedule specified in (d)(1).

Commonwealth's Brief at 15.

The Commonwealth further avers,

[t]hat difference between a drug and a controlled substance is further evidenced in the Controlled Substances Act, 35 P.S. § 780-101, which provides two separate and distinct definitions for the terms.  Pursuant to the Act, "controlled substance" means a drug, substance, or immediate precursor included in Schedules I through V of the Act, while "drug" means:

(i) substances recognized in the official United States Pharmacopeia, or official National Formulary, or any supplement to either of them; and (ii) substances intended for use in the diagnosis, cure, mitigation, treatment or prevention of disease in man or other animals; and (iii) substances (other than food) intended to affect the structure or any function of the human body or other animal body; and (iv) substances intended for use as a component of any article specified in clause (i), (ii) or (iii), but not including devices or their components, parts or accessories.[]

*See* 35 P.S. § 780-102([b])….

*Id.* (formatting altered).

In support of its interpretation of the statute, the Commonwealth reiterates the argument, presented before Judge Scanlon at the *habeas* hearing, that **Roser** supports a conclusion section 3802(d)(2) covers drugs which are not necessarily controlled substances. In that case, Roser was arrested for DUI under section 3802(a)(1); however, as a defense at trial, Roser "testified … he was not under the influence of alcohol when he was pulled-over but had, rather, ingested gasoline and bug and tar remover several hours before driving in an attempt to commit suicide." **Roser**, 914 A.2d at 450-51. After the close of testimony, the trial court permitted the Commonwealth to amend the information to include DUI charges under sections 3802(d)(2) and (d)(3).[4] *Id.* at 452. Ultimately, the jury acquitted Roser of the section 3802(d)(2) charge, but convicted him of the charge under section 3802(d)(3). *Id.*

On appeal, Roser challenged, *inter alia*, the trial court's advising "the jury that 'drugs' are 'any substance, other than food, that is intended to affect the function of the human body.'" *Id.* at 455. Roser insisted

> the "intention" referred to in this definition is not the intention of the defendant but, rather, refers to "causation." In other words, [Roser] argue[d] that a substance is a drug if it causes changes

_____

[4] Section 3802(d)(3) states an individual may not drive if he or she is "under the combined influence of alcohol and a drug or combination of drugs to a degree which impairs the individual's ability to safely drive, operate or be in actual physical control of the movement of the vehicle." 75 Pa.C.S. § 3802(d)(3).

in the bodily function of a human being, and that this is a question of law that must be established by expert testimony where the drug is not a controlled substance, as here.

*Id.* (cleaned up). In disagreeing, the **Roser** panel explained:

[Roser] provided the evidence, through his own testimony, to establish that gasoline and bug and tar remover are drugs under the circumstances of this case. [Roser] stated that he ingested these substances in an effort to commit suicide. He stated that, prior to drinking the bug and tar remover, he "turned the label around and … looked at the bottom and … saw it said [']Harmful, fatal if swallowed,[']" and he wanted to "do [his] best to make this fatal." Moreover, he testified that, after he ingested gasoline and bug and tar remover, he experienced loss of consciousness and his mind was "racing uncontrollably." Given this evidence, the jury could properly infer that [Roser's] consumption of the gasoline and bug and tar remover resulted in these symptoms or "changes in the bodily function" of [Roser]. Accordingly, the trial court did not err in its instruction to the jury.

*Id.* at 455-56 (citations to the record omitted).

In the case *sub judice*, the Commonwealth stresses the trial court in **Roser** "provided the jury with the definition of a drug as defined by the [C]ontrolled [S]ubstances [A]ct. On appeal, this Court affirmed the use of the instruction, [noting] that the term was properly defined." Commonwealth's Brief at 17 (citing **Roser**, 914 A.2d at 456) (footnote omitted).[5] Consequently, the Commonwealth maintains **Roser** supports its interpretation

_____

[5] The Commonwealth also notes that the fact Roser was acquitted of the section 3802(d)(2) charge "is irrelevant to the issue at hand, as the case stands for the broader legal principle regarding the definition of the drug" and "[t]he factual distinction" of Roser's acquittal "does not undermine the case's applicability to the legal question before this Court." *Id.* at 17 n.2.

- 11 -

of section 3802(d)(2) as being applicable to drugs, such as kratom, which are

not controlled substances.

In response, Walsh reiterates his argument that,

[t]o establish a *prima facie* case for DUI under [section] 3802(d)(2), the Commonwealth must establish three elements: "1) that the defendant drove; 2) while under the influence of a **controlled substance**; and 3) to a degree that impairs the defendant's ability to drive safely." … **Spence**, 290 A. 3d [at] 309 … (citing … **Griffith**, 32 A. 3d [at] 1239…) (emphasis added).

In this case, on the face of the elements themselves, which is the standard for a *prima facie* case, the Commonwealth simply cannot sustain its burden as it cannot establish the second element of DUI under [section] 3802(d)(2). The indisputable fact that is central to this appeal is that kratom and caffeine are both not controlled substances. Viewing this fact in the light most favorable to the Commonwealth does not change that. It only highlights that the Commonwealth cannot, under any circumstances, meet [its] burden.

Walsh's Brief at 9-10 (footnote omitted).

Walsh also insists **Roser** does not control because **Spence** and **Griffith**

were decided after **Roser**, "thereby taking into consideration the holding of

**Roser** and still outlining the need for a controlled substance under [section]

3802(d)(2) in their analysis of the elements of the statute." **Id.** at 10

(footnote omitted). Walsh further avers:

[Section] 3802(d) begins with the heading reading "Controlled Substances" before delving into the subsections. Pursuant to 1 Pa.C.S. § 1924, the heading of a subsection "shall not be considered to control but may be used to aid in the construction" of the statute. The [L]egislature listing [section] 3802(d)(2) under the "Controlled Substances" heading shows its intent to not apply non-controlled substances in a finding of DUI. If, as the Commonwealth suggests, the [L]egislature intended to differentiate between the two, it would make significantly more

sense for the heading to be something more expansive, such as "Drugs," as opposed to a more constricted "Controlled Substances."

*Id.* at 11-12 (footnote omitted).

After carefully reviewing the statutory language, as well as the cases cited by both parties, we agree with the Commonwealth's interpretation of section 3802(d)(2). We begin by recognizing:

> Statutory interpretation implicates a question of law. Thus, our scope of review is plenary, and our standard of review is *de novo.* ***Commonwealth v. El***, 933 A.2d 657, 662 (Pa. Super. 2007).
>
> Pennsylvania's Statutory Construction Act informs our analysis, establishing, "The object of all interpretation and construction is to ascertain and effectuate the intention of the General Assembly." 1 Pa.C.S.[] § 1921(a). "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S.[] § 1921(b). Finally, if the General Assembly supplies definitions of the words comprising a statute, those definitions are binding. ***Commonwealth v. Kimmel,*** … 565 A.2d 426, 428 ([Pa.] 1989) ("A court must construe each statute, therefore, according to its internal definition.").

***Commonwealth v. Van Aulen***, 952 A.2d 1183, 1184–85 (Pa. Super. 2008).

Presently, we discern no ambiguity in the words of the DUI statute. The Legislature chose to use the term "controlled substance" in section 3802(d)(1), and the different term "drug" in section (d)(2). Both terms are separately defined in The Controlled Substance, Drug, Device and Cosmetic Act. ***See*** 35 P.S. § 780-102(b). If the Legislature intended section 3802(d)(2) to be limited to controlled substances, it would have used that term as it did in the preceding section. Thus, we conclude the Legislature intended section 3802(d)(1) to be limited to "controlled substances," while section (d)(2)

- 13 -

covers a broader range of "drugs," as defined by section 780-102(b). **See Commonwealth v. Collins**, 286 A.3d 767, 774 (Pa. Super. 2022) ("When 'a section of a statute contains a given word, the omission of such word from a similar section of the statute shows a different legislative intent.'") (quoting **Commonwealth v. Berryman**, 649 A.2d 961, 965 (Pa. Super. 1994) (*en banc*)).

We also agree with the Commonwealth that our decision in **Roser** supports this interpretation. We recognize the **Roser** panel did not specifically address whether section 3802(d)(2) is limited to controlled substances. However, we explicitly found the evidence "establish[ed] that gasoline and bug and tar remover are drugs" under the DUI statute. **Roser**, 914 A.2d at 455. We also held the trial court's utilizing the "definition [of 'drugs'] derived directly from 35 P.S. § 780-102" in instructing the jury was an accurate and adequate instruction. **Id.** at 455-56. Thus, the **Roser** decision bolsters our interpretation of section 3802(d)(2) as covering drugs beyond those listed as controlled substances.

Moreover, Walsh's argument that **Griffith** and **Spence** overruled **Roser** is unconvincing. We concede that in **Spence**, this Court stated to sustain a conviction under section 3802(d)(2), the Commonwealth must establish an individual drove "while under the influence of a controlled substance." **Spence**, 290 A.3d at 309 (citing **Griffith**, 32 A.3d at 1239). Although the **Spence** panel cited **Griffith** to support this statement, at no point in **Griffith** did our Supreme Court limit the scope of section 3802(d)(2) to controlled

- 14 -

substances. In fact, in the following portion of the *Griffith* decision cited by *Spence*, the Court referred only to "drugs" when discussing the distinction between the various subsections of the DUI statute:

> [S]ubsection 3802(d)(1) prohibits one from driving if there is any amount of a Schedule I controlled substance, any amount of a Schedule II or Schedule III controlled substance that has not been medically prescribed for the individual, or any amount of a metabolite of a controlled substance in one's blood. Analogously to subsections 3802(a)(2), (b), and (c) for alcohol intoxication, subsection 3802(d)(1) requires a measurement to determine if any amount of a Schedule I, II, or III controlled substance is detectable in the defendant's blood. Second, and analogously to subsection 3802(a)(1) for alcohol intoxication, subsection 3802(d)(2) prohibits driving if one is "under the influence of a **drug or combination of drugs** to a degree which impairs [one's] ability to safely drive." This provision by its plain text does not require that a **drug** be measured in the defendant's blood, nor does it specify any particular manner by which the Commonwealth is required to prove that the defendant was under the influence of a **drug**. Like subsection 3802(a)(1), subsection 3802(d)(2) does not limit, constrain, or specify the type of evidence that the Commonwealth can proffer to prove its case.

*Griffith*, 32 A.3d at 1239 (internal citation omitted; some emphasis omitted; other emphasis added). The Court then discussed section 3802(d)(2)'s "requirement for expert testimony[,]" which was the precise issue upon which the Court had granted the Commonwealth's petition for allowance of appeal. *See id.*; *see also id.* at 1235. Notably, in its analysis of section 3802(d)(2), the *Griffith* Court never once referred to a controlled substance; it only used that term when discussing section 3802(d)(1). When discussing section 3802(d)(2), the *Griffith* Court used the term "drug." *See id.* at 1240 ("The only question here is whether the evidence was sufficient to establish that

[Griffith's] inability to drive safely was the result of the influence of a **drug or combination of drugs**.") (emphasis added); **id.** ("We hold that the above-summarized evidence was sufficient to establish that [Griffith] was under the influence of **a drug or combination of drugs** to a degree that impaired her ability to safely drive.") (emphasis added).

Moreover, although this Court in **Spence** stated section 3802(d)(2) required proof the defendant was under the influence of a controlled substance, the appellant there was challenging whether the Commonwealth had presented sufficient evidence establishing he was under the influence of **marijuana** "to a degree that impaired his ability to safely drive, operate, or be in actual physical control of the movement of his vehicle." **Spence**, 290 A.3d at 310. As marijuana is clearly a controlled substance, the question of whether a drug that is **not** a controlled substance can satisfy section 3802(d)(2) was not at all relevant to our analysis or holding in **Spence**. The same was true in **Griffith**, where Griffith's blood test showed she had Diazepam and Nordiazepam in her bloodstream, both of which are controlled substances. **Griffith**, 32 A.3d at 1234.

In sum, the **Spence** panel was not tasked with deciding whether section 3802(d)(2)'s reference to "drugs" extended beyond controlled substances, as marijuana was the substance at issue in that case. Moreover, **Griffith** does not hold section 3802(d)(2) is limited to controlled substances. Indeed, the **Griffith** Court referred only to "drugs" when discussing the elements of the statute and the sufficiency of the evidence to support Griffith's conviction

under it. Accordingly, **Roser** is more on point to the issue at hand, where we assessed the adequacy of a jury instruction on the definition of "drugs" set forth in section 3802(d)(2); the appellant had ingested gasoline and bug and tar remover, both of which are not controlled substances; and this Court concluded the definition of "drugs" provided by the trial court, which tracked the language of 35 P.S. § 780-102, was a proper instruction under section 3802(d)(2). Accordingly, we conclude the term "drugs" as used in section 3802(d)(2) is not limited to controlled substances.

Given this decision, we conclude Judge Scanlon erred by granting Walsh's petition for writ of *habeas corpus* regarding his DUI charge. Walsh only argued in his *habeas* petition that his charges must be dismissed because kratom and caffeine are not controlled substances, and he conceded at the *habeas* hearing that both substances meet the definition of a "drug." **See** N.T. Hearing at 5 (Walsh's counsel's stating, "So the only way that the Commonwealth can show their case is through [proving a] drug or combination of drugs, which again, **by the definition of drug or combination of drugs, kratom is a drug, caffeine is a drug**.") (emphasis added). Because Walsh conceded this element of section 3802(d)(2) was satisfied, and he presented no other challenge to the sufficiency of the Commonwealth's evidence to prove a *prima facie* case for any other element of this offense, his *habeas* petition should have been denied regarding his DUI charge under 75 Pa.C.S. § 3802(d)(2). Accordingly, we reverse the portion of Judge Scanlon's order dismissing that charge. However, Judge Scanlon also

dismissed Walsh's charge for public drunkenness under 18 Pa.C.S. § 5505, and the Commonwealth raises no challenge to that determination herein. Accordingly, the Commonwealth has waived any such issue for our review, and we affirm Judge Scanlon's order dismissing Walsh's charge under section 5505.

Before concluding, we briefly address the analysis Judge Krull set forth in her opinion, suggesting we affirm Judge Scanlon's order granting Walsh's *habeas* petition. It appears Judge Krull concluded section 3802(d)(2) is not limited to controlled substances and, thus, Walsh's use of kratom satisfies the statute. **See** TCO at unnumbered 14 (court's stating, "kratom is not a controlled substance and must be evaluated as a 'drug' under the DUI statute"). Nevertheless, Judge Krull stated we should affirm Judge Scanlon's order granting Walsh's *habeas* petition on two alternative grounds.

First, Judge Krull found Officer Kelso's testimony was insufficient to establish a "causal connection between [Walsh's] conduct [of erratic driving] and kratom (and/or caffeine)[,]" as there was no testimony regarding the "officer's knowledge, experience or even the length of his police service." **Id.** at unnumbered 5. The judge elaborated:

> The record before this court reflects testimony of a police officer without any reference to his years of service; any specialized education or drug interdiction experience; any expert testimony (or even the lab test results presented at the preliminary hearing) to substantiate kratom's (or caffeine's) effects or threshold levels of chemical activity. In short, evidence of kratom's use has been established, but the critical link establishing that kratom caused deficient driving is missing.

- 18 -

*Id.* at unnumbered 8. Ultimately, Judge Krull determined "the unknowns presented by the record regarding Officer Kelso and his experience and knowledge negate any prospect the court ***could credit his testimony*** relevant to kratom's effect." *Id.* at unnumbered 15 (emphasis added).

As set forth above, weight and credibility of the evidence are not factors in assessing whether the Commonwealth sustained its burden of establishing a *prima facie* case at the preliminary hearing. ***See Hilliard***, 172 A.3d at 10. Moreover, in Walsh's petition for writ of *habeas corpus*, he did not raise any claim that Officer Kelso's testimony was insufficient to establish a causal link between Walsh's use of kratom (and/or caffeine) and his deficient driving. Walsh also did not raise any such argument at the *habeas* hearing before Judge Scanlon. Thus, we decline to affirm on this alternative basis, which was not raised or argued below. ***See Commonwealth v. Little***, 305 A.3d 38, 49 (Pa. Super. 2023) (finding an issue not raised before the trial court when deciding a petition for writ of *habeas corpus* is waived) (citation omitted).

Second, Judge Krull reasoned we should affirm Judge Scanlon's order because the DUI statute is unconstitutional, as it "fails to meet due process requirements under a void for vagueness analysis…." TCO at unnumbered 14 (citation omitted). Judge Krull reasoned "the pertinent section of the DUI statute does not include a *mens rea* ('bad act') component." ***Id.*** at unnumbered 10. She also found "a person of ordinary intelligence would not necessarily know that kratom's use would implicate a possible prosecution for DUI" and, thus, "neither proper notice nor the inference of an understanding

- 19 -

of wrongdoing have been demonstrated." ***Id.*** at unnumbered 14. Additionally, Judge Krull seemingly concluded the statute is unconstitutional as applied in this case, reasoning that

> [s]ubjecting [Walsh] to DUI prosecution based on the purported use of kratom, especially where the connection of its ingestion cannot be specifically tied to the errant driving behaviors and the absence of a clear standard opens the door to unchecked discretion in subjecting this individual to criminal penalties[,] defies due process.

***Id.***

Again, Walsh never raised any constitutional challenge to the statute in his *habeas* petition, or at the hearing before Judge Scanlon. "An appellate court should not address constitutional issues unnecessarily or when they are not properly presented and preserved in the trial court for our appellate review." ***Berryman***, 649 A.2d at 973. "Furthermore, this [C]ourt may not raise a constitutional issue *sua sponte*." ***Id.*** Accordingly, we decline to *sua sponte* examine the constitutionality of section 3802(d)(2) as an alternative basis for affirming Judge Scanlon's order.

Based on the foregoing, we reverse the order granting Walsh's petition for writ of *habeas corpus* to the extent it dismissed his charge of DUI under 75 Pa.C.S. § 3802(d)(2), and we affirm the order to the extent it dismissed Walsh's charge for public intoxication under 18 Pa.C.S. § 5505. We remand Walsh's case for further proceedings.

Order affirmed in part, reversed in part. Case remanded for further proceedings. Jurisdiction relinquished.

- 20 -

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>3/16/2026</u>